## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BADAH KAI CHO, Midshipman Second    *
Class, United States Naval Academy

       *

      *Plaintiff*,

       *

     v.                                 Civil Action No. RDB-26-0548

       *

JOHN C. PHELAN, Secretary of the Navy,   *
*et al.*,

       *

     *Defendants*.

       *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION</u>

This action pursuant to Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), arises from the decision of United States Naval Academy officials to disenroll Plaintiff Midshipman Second Class Badah Kai Cho ("Plaintiff" or "MIDN Cho") from the United States Naval Academy ("the Academy") in Annapolis, Maryland. (ECF No. 2-1 at 2.) After peers accused MIDN Cho of cheating on a physics exam in May 2025, a Brigade Honor Board adjudicated him guilty of violating the Academy's honor concept and recommended his separation. (*Id.*; ECF No. 8 ¶¶ 7–61.) MIDN Cho's appeal of the Brigade Honor Board decision was denied and, on February 10, 2026, the Superintendent of the Naval Academy issued a Memorandum Report ordering his disenrollment. (ECF No. 8 ¶ 61; ECF No. 2 Ex. A.) On February 11, 2026, MIDN Cho initiated this action by filing in this Court a two-Count Complaint for declaratory and injunctive relief against Defendants John C. Phelan, Secretary of the Navy ("Secretary Phelan"); Lieutenant General Michael J. Borgshulte, Superintendent of the Naval Academy ("Superintendent" or "Lt. Gen. Borgshulte"); and Captain Austin

Jackson, acting Commandant of Midshipmen at the Naval Academy ("Commandant" or "Capt. Jackson") (collectively, "Defendants").  Specifically, MIDN Cho alleges against all Defendants: (1) Violation of Procedural Due Process Under Section 706 of the APA (Count I); and (2) Violation of Federal Statutes and Navy Regulations Under Section 706 of the APA (Count II).  (ECF No. 1; ECF No. 8.)  On February 13, 2026, Plaintiff filed an Amended Complaint alleging identical claims but adding substantive allegations.  *See* (ECF No. 8).

Presently pending before this Court are Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 2) and Supplement (ECF No. 10) (collectively, "Plaintiff's Motion for Preliminary Injunction") and Plaintiff's Emergency Motion for Temporary Restraining Order *Ex Parte* (ECF No. 5) ("Plaintiff's Motion for TRO").  Defendants have responded in Opposition (ECF No. 11) to Plaintiff's Motion for Preliminary Injunction, and Plaintiff has filed a Reply (ECF No. 13).  Via electronic correspondence to this Court dated February 13, 2026, counsel for all parties represented that they had reached an agreement that rendered the pending Motion for TRO unnecessary.  *See* (ECF No. 9).  On February 19, 2026, this Court heard oral arguments from the parties regarding the pending motions.  As agreed by counsel on the record and in their electronic correspondence to this Court, Plaintiff's Motion for TRO (ECF No. 5) is DENIED AS MOOT.  For the reasons stated on the record and expounded below, Plaintiff's Motion for Preliminary Injunction (ECF Nos. 2, 10) is DENIED.

## BACKGROUND

Although this case arises from accusations that Plaintiff MIDN Cho used his cellphone to cheat during his General Physics II exam on or about May 5, 2025, MIDN Cho's substantive claims pertain to the process by which Defendants investigated those accusations, adjudicated

him guilty, and, thereafter, ordered his separation from the Academy.  *See generally* (ECF No. 8).  Accordingly, this Court first provides a brief factual background of the cheating allegations before explaining the general honor procedures at the Academy and MIDN Cho's allegations as to how those procedures violated Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, in his case.

## I.    Cheating Accusation against MIDN Cho

On or about May 5, 2025, MIDN Cho participated in a final examination for General Physics II (SP212) at the U.S. Naval Academy ("the Academy").  (ECF No. 8 ¶ 7.)  He entered that exam with a 95% overall average in the course, and he had received a grade of "A" in the prerequisite Physics I course.  (*Id.* ¶ 45.)  He also had a documented history of superior performance in advanced STEM ("Science Technology Engineering Mathematics") courses, including grades of "A" in Physics I, Calculus III, Probability and Statistics, and Electrical Engineering.  (*Id.* ¶ 46.)  Nevertheless, MIDN Cho had previously been accused of violating the Academy's honor concept by cheating on a professional knowledge quiz during his plebe year in February 2024.  (ECF No. 11 at 4; ECF No. 11 Ex. 1 at 1.)  MIDN Cho pleaded guilty to that violation and was not separated from the Academy at that time.[1]  (ECF No. 11 at 4; ECF No. 11 Ex. 1 at 1–2.)

During an early portion of the May 2025 Physics II exam, three female midshipmen reported to the instructor, Lieutenant Commander Torres ("LCDR Torres"), that they

---

[1]  As noted on the record and in the Defendants' Opposition (ECF No. 11) to preliminary injunction, MIDN Cho was also subject to some inquiry regarding his alleged use of a phone during an exam on February 18, 2025.  (ECF No. 11 at 4.)  As explained on the record, that inquiry began as an honor concept violation but was ultimately resolved as misconduct rather than an honor violation.

believed MIDN Cho was using a cellphone to cheat on the exam.  (*Id.* ¶ 8.)  LCDR Torres confronted MIDN Cho and asked him to show that his cellphone was in his backpack.  (*Id.* ¶¶ 9–10.)  MIDN Cho denied cheating and showed that his cellphone was in his backpack, after which he was permitted to complete the exam.  (*Id.* ¶¶ 9–11.)  During the exam, LCDR Torres also asked MIDN Cho to unlock and show his cellphone screen, which he did in the presence of another instructor.  (*Id.* ¶ 12.)  LCDR Torres did not observe any evidence of cheating on the screens that MIDN Cho showed him.  (*Id.* ¶ 13.)  At no point was Plaintiff's cellphone secured for any digital forensic analysis.  (*Id.* ¶ 14.)  As explained below, these events ultimately resulted in a Brigade Honor Board and disenrollment proceedings.

## II.    Naval Academy Brigade Honor Board & Disenrollment Proceedings

As noted on the record, midshipmen assume a service obligation at some point after their second year at the Academy.[2]  Thus, disenrollment may carry different implications depending on the class year of the disenrolled midshipman.  As relevant to this matter, a second-class midshipman (junior) "disenrolled for cause resulting from actions that occurred only before the start of the second-class academic year will be discharged as if he or she were a third-class midshipman."  (ECF No. 2 Ex. B at 14.)  A third-class midshipman who is disenrolled will have no active-duty service obligation but will retain their Military Service Obligation.  (*Id.* at 14.)  Disenrolled first- and second-class midshipmen not ordered to active

---

[2] Pursuant to 10 U.S.C. § 8459, all midshipmen sign an agreement following their second year of attendance at the Naval Academy in which they confirm "[t]hat upon graduation from the Naval Academy" they "will accept an appointment, if tendered, as a commissioned officer . . ." and "will serve on active duty for at least five years immediately after such appointment."  10 U.S.C. § 8459(a)(2)(A), (B); *see also* (ECF No. 2 Ex. B at 14).  Midshipmen who are discharged from the Naval Academy after incurring their service obligation may be required to complete such obligation in the enlisted ranks, rather than as a commissioned officer.  10 U.S.C. § 8459(a)(4), (b)(1), (b)(2).

duty or recommended for waiver will have to reimburse the government for the cost of their advanced education.  (*Id.* at 15.)  In this case, as explained on the record, MIDN Cho's disenrollment will not result in an active-duty service obligation or any requirement that he repay the cost of tuition for his time at the Academy.

Although MIDN Cho's Amended Complaint does not explicitly delineate the honor review process at the Naval Academy, he attaches to his Motion for Preliminary Injunction (ECF No. 2) various statutes, Naval instructions, and Academy regulations from which this Court draws the below summary.

### A.  Statutory Disenrollment Procedures

Under 10 U.S.C. § 8462, Congress provided general instruction as to discharge of midshipmen for unsatisfactory conduct or inaptitude.  Pursuant to § 8462, discharge from the Academy proceeds in two steps.  First, "whenever the Superintendent determines that the conduct of a midshipman is unsatisfactory," that Superintendent "shall submit to the Secretary of the Navy in writing a full report of the facts . . . ."  10 U.S.C. § 8462(a), (a)(1).  Second, "[a] midshipman upon whom a report is made . . . shall be given an opportunity to [1] examine the report and [2] submit a written statement thereon."  *Id.* § 8462(b).  The Secretary then may discharge the midshipman from the Academy and from Naval Service if he or she "believes, on the basis of the report and statement, that the determination of the Superintendent . . . is reasonable and well founded . . . ."  *Id.*  Although the language of this statute refers to the Secretary of the Navy, the Secretary enjoys statutory authority to "assign such of his functions, powers, and duties as he considers appropriate to the Under Secretary of the Navy and to the Assistant Secretaries of the Navy."  *Id.* § 8013(f).

**B. Secretary of Navy Delegations and Instruction as to Disenrollment**

Pursuant to a Memorandum dated November 1, 2007, then-Secretary of the Navy Winter delegated to the Assistant Secretary of the Navy (Manpower & Reserve Affairs) ("ASN (M&RA)") the authority to disenroll midshipmen pursuant to 10 U.S.C. § 8462. (ECF No. 2 Ex. E.) The November 2007 Memorandum specifically provided that the ASN (M&RA) could further delegate such disenrollment authority. (*Id.*) Accordingly, in December 2007, then-ASN M&RA Navas delegated to the Superintendent of the Naval Academy the authority to discharge or disenroll midshipmen due to resignation, medical board cases, and academic deficiency cases. (ECF No. 2 Ex. F.) Importantly, however, Assistant Secretary of the Navy (Manpower & Reserve Affairs) Navas specifically retained his authority to decide "[d]isenrollment/discharge cases in the areas of conduct, honor and insufficient aptitude per 10 U.S.C. § [8462] . . . ."[3] (ECF No. 2 Ex. F.)

More recently, on April 24, 2025, Defendant Secretary of the Navy Phelan issued SECNAVINST 1531.4B, (ECF No. 2 Ex. B), which delegated to the Superintendent of the Naval Academy final disenrollment authority in "unsatisfactory conduct" cases involving fourth class (freshman) and third class (sophomore) midshipmen such as MIDN Cho, who was a midshipman third class at the time he was accused of cheating on his exam. (ECF No. 2 at 2.) Specifically, SECNAVINST 1531.4B provides:

> (c) Unsatisfactory Conduct. Pursuant to reference (a), section 8462, if the USNA Superintendent determines that the conduct of the midshipman is unsatisfactory, he or she is delegated the authority to disenroll and discharge midshipmen with no service obligation. In cases in which the

---

[3] The December 2007 memorandum refers to 10 U.S.C. § 6962, which, as noted on the record, is the predecessor to 10 U.S.C. § 8462.

Superintendent recommends disenrollment for a midshipman who has incurred a service obligation, he or she must submit a written report to the ASN (M&RA) after providing the midshipman with an opportunity to examine the report and to provide a written statement in response. Based on the report and statement, the ASN (M&RA) may disenroll the midshipman from USNA.

(ECF No. 2 Ex. B at 8.)

Put differently, where, as here, a midshipman is disenrolled for unsatisfactory conduct, the regulation delegates authority to the Superintendent to disenroll and discharge midshipmen with no service obligation. (*Id.* at 8.) Significantly, if a midshipman has already incurred a service obligation, the Superintendent must submit a written report to the Assistant Secretary of the Navy (Manpower & Reserve Affairs) after providing the midshipman with an opportunity to examine the report and provide a written statement in response. (*Id.*) Based on that report and statement, the ASN (M&RA) may disenroll the midshipman from USNA. (*Id.*)

### C. Naval Academy Procedures

#### 1. Brigade Honor Board

Chapter 3 of USNA Instruction 1610.3M ("USNAINST 1610.3M"), (ECF No. 2 Ex. G), provides the procedure by which the Academy processes accusations that midshipmen have committed honor offenses. Specifically, USNAINST 1610.3M 0313, lays out a twenty-one-day procedure by which accusations of honor violations are reported, investigation and hearing occur, and the Commandant of Midshipmen adjudicates the purported violation. (ECF No. 2 Ex. G at 35.) Proceedings begin when a formal reporting of the possible honor violation is submitted to the Brigade Honor Program, which should occur within sixty days of

the incident.  (ECF No. 2 Ex. G at 18.)  That report and incident then proceed through initial processing and the accused is notified of the report against him or her before a Brigade Investigating Officer ("BIO") conducts a thorough investigation of the incident.  (*Id.* at 18–21.)  The BIO's investigation is supposed to be impartial and may culminate in an investigation report and formal statement of charges, which are forwarded to the Brigade Honor Advisor, Honor Officer, and Legal Advisor for review.  (*Id.* at 22.)  The accused receives a copy of this "case package," including all evidence against him, at least 48 hours before any hearing.  (*Id.*)

As relevant to this case, a non-adversarial hearing then occurs before a Brigade Honor Board, which consists of nine voting members from the Brigade of Midshipmen.  (*Id.* at 24.)  During this non-adversarial hearing, the BIO and the accused present evidence and examine witnesses.  (*Id.* at 27–28.)  Notably, pursuant to USNAINST 1610.3M, "[t]he Presiding Officer may not curtail inquiry into issues relevant to the acceptance or denial of charge(s)" during this hearing.  (*Id.* at 28.)  After presentation of evidence, the nine voting members hold a vote to determine whether, by a preponderance of the evidence, the record shows that the accused violated the honor concept.  (*Id.* at 28.)  To be found in violation, six of the nine members must vote that the accused violated the honor concept.  (*Id.*)  If the Brigade Honor Board finds an accused in violation, it holds a separate vote as to whether the violation should result in separation from the Brigade.  (*Id.* at 29.)  During this separate vote, board members may consider only (1) the rank of the midshipman; (2) any prior honor offenses committed by the midshipman; and (3) the egregiousness of the offense.  (*Id.*)  A vote of at least seven of nine members is required to forward the midshipman to the Commandant of Midshipmen for adjudication.  (*Id.*)  A midshipman who is found to be in violation of the honor concept may

appeal the Brigade Honor Board's decision to the Commandant of Midshipmen based on new evidence or an asserted procedural violation of USNAINST 1610.3M that substantially prejudiced the midshipman. (*Id.* at 30.) The Commandant will then thoroughly review the case and may recommend a new Honor Board be convened or that the midshipman be deemed "Not in Violation." (*Id.*)

### 2. Commandant & Superintendent Adjudication

Separately from appeal proceedings, the Commandant also adjudicates midshipmen who have been found in violation by the Brigade Honor Board if those midshipmen have a prior honor offense, if they are first or second class (junior or senior) midshipmen, or if they have been recommended for separation. (ECF No. 2 Ex. G at 31–32.) During this process, the Commandant reviews the report of the case, including the hearing transcript, before reaching a recommendation as to retention or separation of the accused midshipman. (*Id.* at 32.) If the Commandant recommends separation, the case is forwarded to the Superintendent via the Superintendent's Staff Judge Advocate. (*Id.*)

Upon receiving the case from the Commandant, the "Superintendent shall personally meet with the midshipman, in the presence of their chain of command, to discuss the honor offense" and to provide the midshipman an opportunity to be heard and to present information in extenuation. (*Id.* at 32.) After this meeting, the Superintendent may recommend discharge for unsatisfactory conduct. "If the Superintendent recommends separation, the midshipman will be advised of the decision in writing, and further advised of his/her right to submit a statement to the Secretary of the Navy showing cause why he/she

should be retained at the Naval Academy." (*Id.* at 32–33.)  With this general procedural background in mind, this Court returns to the facts alleged in MIDN Cho's case.

### III.    Brigade Honor Board Proceedings & Disenrollment as to MIDN Cho

#### A.  Brigade Honor Board

As noted above, three female midshipmen accused MIDN Cho of cheating on his General Physics II exam on or about May 5, 2025.  (ECF No. 8 ¶¶ 7, 8.)  No other exam participants with a clear view reported seeing the alleged conduct.  (*Id.* ¶ 17.)  Approximately 100 days later, on or about August 20, 2025, or August 21, 2025, written statements were taken from each of these witnesses.  (*Id.* ¶ 20.)  On or about November 12, 2025, a Brigade Honor Board ("Honor Board") was convened to consider the accusations that MIDN Cho used unauthorized resources during his General Physics II exam and lied to LCDR Torres about his use of such resources in May 2025.  (*Id.* ¶ 15.)

At the Honor Board, all three accusers testified that they could not be certain they saw Plaintiff holding a phone during the exam.  (*Id.* ¶ 16.)  Testimony at the hearing revealed that Plaintiff had voluntarily shown his phone to LCDR Torres on the day of the exam, and the screens viewed did not show evidence of cheating.  (*Id.* ¶ 26.)  The Honor Board did not permit MIDN Cho to offer evidence that his accusers were biased.  MIDN Cho proffered that these accusers (1) were close friends with a female midshipman with whom he had recently ended a difficult relationship; and (2) were each close friends with each other and two of them—Midshipmen Chang and Mulholland—were roommates.  (*Id.* ¶¶ 18, 21.)  Nevertheless, as explained on the record at the preliminary injunction hearing, the Honor Board's deliberations included some discussion of the possibility of bias.  Seven of the nine Honor

Board members voted that there was sufficient evidence of guilt. (*Id.* ¶ 19.) The Honor Board then unanimously voted to separate MIDN Cho. (ECF No. 11 Ex. 4 at 2.)

### B. Appeal of Brigade Honor Board

MIDN Cho filed an appeal of the Brigade Honor Board decision in which he asserted that (1) the government failed to secure his phone for forensic examination, which could result in prejudice if relevant data became unretrievable due to subsequent use; and (2) the Honor Board improperly excluded evidence of bias due to his accusers' relationship with his ex-girlfriend. (*Id.* ¶¶ 28, 29.) He alleges that his appeal was premised *both* on new evidence—a digital forensic review of his phone—and the procedural violations related to evidence of bias. (*Id.* ¶ 32.) Plaintiff's counsel requested that no ruling be made on the appeal until a digital forensic analysis of Plaintiff's phone activity on May 5, 2025, was completed. (*Id.* ¶¶ 27, 34.) Plaintiff presented a comprehensive audit showing no Safari browsing during the exam and no App Store purchase history of any academic assistance or AI applications. (*Id.* ¶¶ 35, 36, 57.) The analysis showed only a background iCloud sync and browsing on a family iPad in San Jose during the exam period. (*Id.* ¶¶ 37, 38.) Plaintiff's counsel also presented evidence that, given the dimensions of the physics lab, two of the accusers—Midshipmen McGuire and Mulholland—had views so shallow that they would not have been able to see MIDN Cho's lap during the exam. (*Id.* ¶¶ 39–40, 42, 57.) Similarly, Midshipman Chang's view was blocked by Plaintiff's right arm unless she leaned significantly or stood up.[4] (*Id.* ¶ 41.)

---

[4] The timeline of when and how MIDN Cho presented this evidence is not entirely clear from his Amended Complaint. He alleges that the Commandant denied his appeal on December 4, 2025, but also alleges that his counsel submitted a timely appeal that included presentation of forensic phone evidence and lab dimension evidence. *See* (ECF No. 8 ¶¶ 31–42.)

On or about November 16, 2025, Plaintiff requested a copy of the audio tape of his Brigade Honor Board hearing, but he was told it would not be provided. (*Id.* ¶ 52.) Indeed, although the Commandant denied Plaintiff's appeal on December 4, 2025, (*id.* ¶ 31), MIDN Cho did not receive any record of his Honor Board hearing until January 14, 2026, (*id.* ¶ 53). During this period, USNA guidance did not clearly specify certain protections such as access to a verbatim record or 72-hour discovery. (*Id.* ¶ 55.) On December 16, 2025, a Government Accountability Office Report (GAO-26-107049) identified systematic deficiencies in USNA honor and conduct systems and recommended providing accused midshipmen with all records of proceedings for appeal to preserve due process. (*Id.* ¶ 56.)

The Commandant found that (1) it was error and a violation of Academy regulations for the Presiding Officer at MIDN Cho's Honor Board hearing to exclude mention of the relationship between Midshipmen Chang and Mullholland, and (2) the evidence of the relationship constituted evidence of bias such that it was relevant to the witnesses' credibility. (*Id.* ¶¶ 22–23.)[5] He also concluded that Plaintiff received sufficient notice of the allegations and evidence and an in-person hearing to present his own evidence, and neither the government nor Brigade Honor staff had an affirmative obligation to secure Plaintiff's cellphone for forensic investigation. (*Id.* ¶ 25.) Ultimately, the Commandant concluded that— despite the error in excluding evidence of bias—there was adequate objective evidence independent of the testimony of Midshipmen Chang and Mulholland to support the Honor Board's decision. (*Id.* ¶ 30.)

---

[5] It is not entirely clear from Plaintiff's Amended Complaint whether the Commandant issued this finding in Plaintiff's appeal or in an adjudication of MIDN Cho after the Brigade Honor Board as contemplated under USNAINST 1610.3M.

### C. Denial of Administrative Stay and Discharge Recommendation

MIDN Cho then submitted additional evidence, including phone usage and line-of-sight evidence to the Superintendent of the Naval Academy, Defendant Lt. Gen. Borgshulte. (*Id.* ¶ 57.)  On or about February 4, 2026, MIDN Cho requested an administrative stay of separation pending review of a request for a de novo Honor Board proceeding.  (*Id.* ¶ 58.)  On or about February 7, 2026, Plaintiff's counsel requested (1) permission for MIDN Cho to submit a show cause statement to ASN (M&RA) pursuant to 10 U.S.C. § 8462 and (2) an administrative stay of any disenrollment action pending court decision.  (*Id.* ¶ 60.)  The Academy declined to grant such a stay.  On February 10, 2026, Superintendent Borgshulte issued a Memorandum Report directing the Commandant, Defendant Capt. Jackson, to separate MIDN Cho from the Naval Academy and discharge him from Naval Service.  (*Id.* ¶ 61.)  Despite the language of 10 U.S.C. § 8462, the Superintendent did not make a report of unsatisfactory conduct to the Assistant Secretary of the Navy (Manpower & Reserve Affairs) and MIDN Cho was not provided an opportunity to submit a statement to him.

In his Memorandum Report for the Commandant, (ECF No. 2-1 Ex. A), the Superintendent stated:

> I found Midshipman Cho's conduct unsatisfactory for several reasons:
> a.  Most compelling is the contemporaneous report of a fellow midshipman who was certain enough that she observed Midshipman Cho using a phone that she took the extraordinary step of alerting the professor during the exam.  This report was made while her recollection was fresh, while she had a clear opportunity to distinguish the device from his calculator, and before she discussed the incident with the other two witnesses.  I further considered that the three witnesses involved would have jeopardized their own honor had they falsified their allegations . . .
> b.  Per reference (b) [USNAINST 1610.6A], my determination must consider the entirety of Midshipman Cho's record, which includes documented cheating during his Plebe year and a separate incident just three months

prior to the matter at hand where he was caught using a phone during an exam . . . I also note that Midshipman Cho reported to his interview in an unserviceable uniform and displayed little enthusiasm for continued service as a midshipman.

c. The entire chain of command unanimously recommended Midshipman Cho's separation. Across the board, the midshipmen and officers who know Midshipman Cho best believe his conduct failed to meet the required standard and warranted separation.

(ECF No. 2 Ex. A at 2.)  The Superintendent then disenrolled MIDN Cho from the Academy and discharged him from the Naval Service. (*Id.* at 3.)  He ordered that MIDN Cho "be given a General (under Honorable conditions) characterization of service and a Separation Program Designator code of JNC (Unacceptable Conduct)." (*Id.*)

## IV.    Procedural History

On February 11, 2026, MIDN Cho initiated this action by filing in this Court a two-Count Complaint against Secretary Phelan, Lt. Gen. Borgshulte, and Capt. Jackson (collectively "Defendants").  Specifically, he alleges against all Defendants (1) Violation of Procedural Due Process Under Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (Count I); and (2) Violation of Federal Statutes and Navy Regulations Under Section 706 of the APA (Count II).  (ECF No. 8.)  In Count I, Plaintiff alleges that he has a constitutionally protected liberty and property interest in continued enrollment at the Academy, including in the opportunity to (1) complete his education; (2) pursue a commission as a naval officer; and (3) submit a written memorandum to the Assistant Secretary of Manpower and Reserve Affairs.  (*Id.* ¶ 65.)  He alleges that Defendants, as state actors, engaged in proceedings to disenroll him and have irreparably damaged and stigmatized him as a cheater and an individual whose lack of character and integrity warranted his disenrollment from the Academy.  (*Id.* ¶¶ 65–66.)  He emphasizes that he was denied access to a verbatim record of

the proceedings during his appeal and that the Commandant conceded that evidence of bias of the accusers was erroneously excluded. (*Id.* ¶ 67.) In Count II, he alleges that Defendants have taken arbitrary and capricious final agency action by upholding the Brigade Honor Board findings and proceeding with Plaintiff's disenrollment from the Academy in violation of 10 U.S.C. § 8462 and several Navy regulations. (*Id.* ¶¶ 71, 72.)

Also on February 11, 2026, Plaintiff filed an Emergency Motion for Preliminary Injunction (ECF No. 2). On February 13, 2026, MIDN Cho filed the operative, two-Count Amended Complaint (ECF No. 8), which alleges identical claims to his original Complaint but adds brief factual allegations. He then filed a Supplement (ECF No. 10) to his Motion for Preliminary Injunction briefly addressing his argument for preliminary injunction based on the new substantive allegations in his Amended Complaint. In his Amended Complaint, Plaintiff seeks an order declaring that Defendant Secretary of the Navy exceeded his statutory delegation authority in April 2025 when he issued SECNAVINST 1531.4B, *United States Naval Academy Midshipmen Disenrollment*, because he does not have the authority to override provisions of 10 U.S.C. § 8462, which governs disenrollment from the Naval Academy due to "unsatisfactory conduct" such as honor and conduct violations. (ECF No. 2 at 3; ECF No. 8 at 11–12.) Additionally, Plaintiff seeks an injunction preventing Defendants from giving effect to his disenrollment and directing them to reinstate his prior status as a midshipman in good standing. (ECF No. 8 at 11–12.) He further requests that this Court set aside the challenged agency actions as violative of federal statutes and Navy regulations—and, therefore, as arbitrary and capricious—and require Defendants to comport with 10 U.S.C. § 8462 and all applicable Navy regulations in any further proceedings as to Plaintiff's status. (*Id.* at 12.)

On February 12, 2026, Plaintiff filed an Emergency Motion for Temporary Restraining Order *Ex Parte* (ECF No. 5) ("Plaintiff's Motion for TRO").  On February 13, 2026, counsel for Defendants entered his appearance and this Court initially set a virtual hearing as to the Motion for TRO (ECF No. 5) before counsel represented that they had reached an agreement that rendered that Motion "unnecessary."  Accordingly, this Court via Letter Order set a preliminary injunction hearing.  *See* (ECF No. 9).  Defendants then responded in Opposition (ECF No. 11) to Plaintiff's Motion for Preliminary Injunction (ECF Nos. 2, 10), and Plaintiff replied (ECF No. 12).  The Court heard oral argument from the parties at a hearing on Thursday, February 19, 2026.  This matter is now ripe for review.

## STANDARD OF REVIEW

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).  A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."  *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1992)); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (explaining that a preliminary injunction may be characterized as either prohibitory, "aim[ing] to maintain the status quo," or mandatory, "alter[ing] the status quo," and noting the status quo has been defined for this purpose as "the last uncontested status between the parties which preceded the controversy" (citing *Pashby v. Delia*, 709 F.3d 307, 319–

20 (4th Cir. 2013))).

In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), which requires a showing that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors the movant; and (4) an injunction is in the public interest. 555 U.S. at 20; *accord Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020). A court cannot issue a preliminary injunction unless "every factor is met." *Am. Fed'n of Teachers v. Bessent*, 152 F.4th 162, 169 (4th Cir. 2025) (quoting *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023)); *accord Pashby*, 709 F.3d at 320. "[T]he [p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." *Direx*, 952 F.2d at 812 (citation omitted). Thus, a court need not address all four *Winter* factors if one or more factors is not satisfied. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

## ANALYSIS

In Opposition to Plaintiff's Motion for Preliminary Injunction, Defendants contend that this Court lacks subject matter jurisdiction over this matter because disenrollment of a midshipman constitutes a nonjusticiable military decision. *See generally* (ECF No. 11 at 9–10). Although Defendants situate this argument within the first prong of the preliminary injunction analysis, jurisdiction presents a distinct and threshold inquiry. *See, e.g., Standage v. Braithwaite*, 526 F. Supp. 3d 56 (D. Md. 2021) (addressing Rule 12(b)(1) motion to dismiss before

preliminary injunction motion).    Accordingly, this Court first addresses Defendants' jurisdictional arguments before assessing the applicability of the *Winter* factors in this case.[6]

## I.    Justiciability

A challenge to justiciability implicates a federal court's subject matter jurisdiction, or its authority to hear the matter brought by a complaint.  *See Am. Acad. Of Pediatrics v. Food & Drug Admin.*, 379 F. Supp. 3d 461, 473 n.7 (D. Md. 2019) (quoting *Hamilton v. Pallozzi*, 848 F.3d 614, 619 (4th Cir. 2017), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc.*, 597 U.S. 1 (2022)); *Davis v. Thompso*n, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  The U.S. Court of Appeals for the Fourth Circuit permits judicial review of military decisions on a case-by-case basis, weighing the nature of the plaintiff's claims against the risk of interference with the military function under the framework articulated in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).  *Hrdlicka v. Toro*, Civ. No. RDB-22-2299, 2023 WL 4108267, at *4 (D. Md. June 21, 2023); *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020).  Under *Mindes*, a matter is justiciable where a plaintiff satisfies two threshold requirements, and the Court deems review appropriate upon balancing four additional factors.

Accordingly, the *Mindes* analysis proceeds in two steps.  First, the plaintiff bears the burden to show that he has: (1) alleged a "deprivation of a constitutional right, or . . . that the military has acted in violation of applicable statutes or its own regulations;" and (2) "exhausted the available intraservice corrective measures."  *Hrdlicka*, 2023 WL 4108267, at *4 (first quoting *Mindes*, 453 F.2d at 201–202; and then quoting *Roe*, 947 F.3d at 218); *see also Guerra v.*

---

[6]  As agreed by all parties on the record and noted above, Plaintiff's Motion for Temporary Restraining Order (ECF No. 5) is DENIED AS MOOT.

*Scruggs*, 942 F.2d 270, 276 (4th Cir. 1991).  Second, and only if the plaintiff has satisfied his initial burdens, the court balances: (1) the nature and strength of the plaintiff's challenge to the military determination; (2) the potential injury to the plaintiff if review is refused; (3) the type and degree of anticipated interference to the military function; and (4) the extent to which the exercise of military expertise or discretion is involved.  *Hrdlicka*, 2023 WL 4108267, at *4 (citing *Roe*, 947 F.3d at 218); *Guerra*, 942 F.2d at 276.   As stated on the record and elaborated below, this matter is justiciable under *Mindes*.

### A.  *Mindes* Framework Step One

In this case, MIDN Cho has sufficiently alleged "deprivation of a constitutional right, or . . . that the military has acted in violation of applicable statutes or its own regulations."  *Roe*, 947 F.3d at 218 (quoting *Guerra*, 942 F.2d at 276).  To allege deprivation of due process as to Count I, MIDN Cho must allege that there was "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate."  *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (quoting *Kendall v. Balcerzak*, 650 F.3d 515, 528 (4th Cir. 2011) (discussing due process claim); *accord Berg v. Commander, Fifth Coast Guard Dist.*, 810 F. Supp. 703, 709 (E.D. Va. 1992) (discussing due process claim under APA).  In *Roe v. Department of Defense*, 947 F.3d 207 (4th Cir. 2020), the Fourth Circuit determined that plaintiffs satisfied this prong of the *Mindes* assessment where they alleged discharge from the Air Force without proper adherence to procedures laid out in Air Force regulations.  *Id.* at 218–19.  In this case, Plaintiff has alleged disenrollment from the Naval Academy without proper adherence to procedures laid out in 10 U.S.C. § 8462 and three Naval Academy Regulations—USNAINST 1610.3M, USNAINST

1610.2P, and USNAINST 1610.6A—consistent with the requirements of § 8462. Accordingly, for the reasons stated on the record, Plaintiff has satisfied the first of the two threshold jurisdictional requirements under *Mindes*.[7]

Similarly, Plaintiff has demonstrated that he has "exhausted the 'available intraservice corrective measures'" by alleging that he completed all possible appeals through the Naval Academy and further appeal to the Board for Correction of Naval Records ("BCNR") would be futile. *Roe*, 947 F.3d at 218 (quoting *Guerra*, 942 F.2d at 276). As an initial matter, the APA does not have an administrative exhaustion requirement that would require a plaintiff to appeal a disenrollment decision to the BCNR prior to filing an APA claim in federal court. *Hrdlicka*, 2023 WL 4108267, at *5 & n.3; *see also Standage v. Braithwaite*, 526 F. Supp. 3d 56 (D. Md. 2021) (determining, in context of ripeness challenge, that APA lacks administrative exhaustion requirement); *Darby v. Cisneros*, 509 U.S. 137 (1993) (holding that the APA itself has no exhaustion requirement such that it demands administrative exhaustion only when required by applicable statute or agency rule). As to justiciability, courts within the Fourth Circuit have concluded that a plaintiff is not required to appeal to the appropriate military board of correction of records prior to filing an APA claim if such appeal would be futile and the

---

[7] Although the first *Mindes* requirement is disjunctive such that Plaintiff's allegation that Defendants failed to follow federal statute and Naval regulations alone satisfies this prong of *Mindes*, this Court additionally noted on the record that the stigma of a general discharge (under honorable conditions) may raise a liberty interest sufficient for jurisdiction. That is, for the purposes of jurisdiction under *Mindes*, Plaintiff has raised a nonfrivolous argument of deprivation of a liberty interest based on the stigma associated with his general discharge (under honorable conditions) with a code of unacceptable conduct. MIDN Cho will be required to disclose that discharge and discharge code in future employment applications. As discussed further below, a general discharge (under honorable conditions) may be sufficient to allege stigma for the purposes of a liberty interest. *See, e.g., May v. Gray*, 708 F. Supp. 716 (E.D.N.C. 1988) (general discharge under honorable conditions based on urinalysis results implicates liberty interest based on stigma from military separation codes visible to future employers); *cf. Guerra*, 942 F.2d at 278–79 (recognizing well-documented liberty interest based on stigma attached to discharge related to a drug offense *but* declining to apply liberty interest to plaintiff who failed to deny drug use).

plaintiff faces irreparable injury. *See Roe v. Shanahan*, 359 F. Supp. 3d 382, 404 (E.D. Va. 2019) *aff'd sub nom. Roe v. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020). Specifically, where (1) plaintiffs face "imminent separation from the branch of the armed forces in which they have served honorably and in which they want to continue serving," (2) the administrative review would delay relief notwithstanding such imminent harm, and (3) the administrative review would likely be an empty formality because the appropriate board can only offer "nonbinding recommendations," such plaintiffs are not required to appeal to a military review board before seeking judicial review. *Id.* at 403–404.

In this case, as explained on the record and acknowledged by Defendants, the BCNR is subordinate to the Secretary of the Navy such that its decisions are not binding on him. Any review by the BCNR of Plaintiff's allegation of violation of procedural due process in Count I thus would be futile because the BCNR lacks the authority to instruct the Secretary regarding disenrollment decisions. Relatedly, the BCNR itself has concluded that it "is not a judicial body with the authority to judge the lawfulness of military regulations." (ECF No. 12 at 5 (quoting Memorandum from the BCNR Chairman to the Secretary of the Navy dated May 23, 2025, ¶ 5.b(c)(3)); ECF No. 12 Ex. A at 11); *see also Roe*, 359 F. Supp. 3d at 403 (concluding exhaustion not required in part because Air Force corrections board lacks authority to rule on constitutionality or validity of Air Force regulations). Thus, to the extent that MIDN Cho's claim in Count II challenges the validity of Defendants' actions pursuant to SECNAVINST 1513.4B based on its alleged inconsistency with 10 U.S.C. § 8462 and associated Naval Academy regulations, the BCNR by its own determination lacks authority to address that claim. For these reasons and for the reasons stated on the record, Plaintiff is not

required to raise his claims to the BCNR prior to filing them in federal court, and he has satisfied the second threshold *Mindes* requirement.

### B. *Mindes* Framework Step Two

Furthermore, each of the four factors considered under the second step of the *Mindes* framework favors the exercise of jurisdiction in this case. Once a plaintiff has satisfied his threshold burdens under *Mindes*, the federal court must balance:

> (1) The nature and strength of the plaintiff's challenge to the military determination;
> (2) The potential injury to the plaintiff if review is refused;
> (3) The type and degree of anticipated interference with the military function. Interference per se is insufficient since there will always be some interference when review is granted, but if the interference would be such as to seriously impede the military in the performance of vital duties, it militates strongly against relief;
> (4) The extent to which the exercise of military expertise or discretion is involved.

*Roe*, 947 F.3d at 218 (quoting *Guerra*, 942 F.2d at 276). The Court addresses each factor in turn.

#### 1. Nature and Strength of Plaintiff's Challenge

As to the nature of a claim, "constitutional claims are normally considered more important than statutory or regulatory claims for purposes of *Mindes* analysis." *Culbreth v. Ingram*, 389 F. Supp. 2d 668, 675 (E.D.N.C. 2005) (citing *Mindes*, 453 F.2d at 201). Nevertheless, courts routinely adjudicate APA claims alleging that disenrollment from a military academy violates procedural due process or is arbitrary and capricious under the APA. *See, e.g.*, *N.B. v. United States*, 552 F. Supp. 3d 387 (E.D.N.Y. 2021); *Spadone v. McHugh*, 842 F. Supp. 2d 295 (D.D.C. 2012) (denying preliminary injunction motion including claim that disenrollment from U.S. Military Academy violated APA). In this case, Plaintiff raises APA

claims such that, as acknowledged on the record, his claims are statutory rather than constitutional. To the extent that Plaintiff's Count II rests on the tension between SECNAVINST 1513.4B and 10 U.S.C. § 8462, however, it implicates the procedural protections afforded to all midshipmen subject to disenrollment for unsatisfactory conduct prior to their service obligation. Thus, while not constitutional in nature, Plaintiff's claim certainly implicates rights broader than those at issue in his own Honor Board proceeding.

As to the strength of a claim, *Mindes* requires that a plaintiff allege more than a "tenuous" claim. *See Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1093 n.4 (N.D. Cal. 2018) (quoting *Mindes*, 453 F.2d at 199). For the purposes of the strength of a claim under *Mindes*, therefore, a claim likely to succeed on the merits easily satisfies this factor, *see, e.g. Roe*, 947 F.3d at 217, while a "tenuous" claim does not, *see, e.g.*, *Mindes*, 453 F.2d at 199. *See also Guerra*, 942 F.2d at 279 (finding nature and strength weigh against court intervention because plaintiff "has no Due Process claim against the Army and cannot succeed on his Equal Protection claim"). In this case, as explained below, Plaintiff's claims fall somewhere in the broad spectrum between a "tenuous" claim and a claim that is likely to succeed on the merits at the preliminary injunction stage.

As noted above and on the record, as to Count I, Plaintiff has raised a colorable question as to whether he has a liberty interest in his disenrollment due to the stigma associated with a general discharge (under honorable conditions) for unacceptable conduct. He has consistently denied that he cheated, and numerous courts have recognized the stigma associated with a general discharge (under honorable conditions). *See Guerra*, 942 F.2d at 278 (collecting cases). As to Count II, MIDN Cho has alleged that SECNAVINST 1513.4B strips

midshipmen with no service obligation of the protections supplied under 10 U.S.C. § 8462. Although evaluation of the merits of this claim requires further development of the record, Plaintiff's claim that the Naval Academy deprived him of (1) the right provided in § 8462(a) to have the Superintendent's report of the facts submitted to the Secretary for review; and (2) the right provided in § 8462(b) to have an opportunity to provide a show cause statement for the Secretary's review is far from tenuous.  Accordingly, the first *Mindes* factor favors judicial review.

## 2.  Potential Injury to Plaintiff if Review is Refused

The loss of the opportunity to graduate from a military academy constitutes a significant injury, particularly where a plaintiff has denied wrongdoing.  *See Hrdlicka*, 2023 WL 4108267, at *6 (explaining significant injury associated with loss of opportunity to attend Naval Academy Preparatory School but concluding that plaintiff's admission of wrongdoing mitigated injury in context of *Mindes* analysis).  Numerous courts have recognized that disenrollment prior to graduation from a military academy causes irreparable harm.  *Tully v. Orr*, 608 F. Supp. 1222, 1225 (E.D.N.Y. 1985) (quoting *Phillips v. Marsh*, 687 F.2d 620, 622 (2d Cir. 1982)); *Love v. Hidalgo*, 508 F. Supp. 177, 183 (D. Md. 1981) (noting that immediate discharge of midshipman would "result[] in certain irreparable harm to his career and status"); *N.B. v. United States*, 552 F. Supp. 3d 387, 397 (E.D.N.Y. 2021) (concluding plaintiff showed irreparable harm where he showed that he would not receive his diploma or U.S. Coast Guard license and officer's commission).  This factor thus favors justiciability.

### 3. Type and Degree of Anticipated Interference

Although "[c]ourts are traditionally reluctant to interfere with the military establishment, including . . . military personnel decisions," *Hrdlicka*, 2023 WL 4108267, at *6 (collecting cases), "[i]ntererence per se is insufficient[,]" *Irby v. U.S. Dep't of Army*, 245 F. Supp. 2d 792, 798 n.5 (E.D. Va. 2003) (citing *Guerra*, 942 F.2d at 276). Rather, the court's decision "must seriously impede the military in the performance of vital duties" to render a dispute nonjusticiable. *Id.* (citing *Guerra*, 942 F.2d at 276). Where a plaintiff's claims are "premised, in part, on an allegation that the Defendants . . . failed to follow their own policies," a dispute is justiciable. *Deese v. Esper*, 483 F. Supp. 3d 290, 305 (D. Md. 2020) (citing *Roe*, 947 F.3d at 218). In this case, the gravamen of both of Plaintiff's claims is that he was denied the process laid out by federal statute and U.S. Naval Academy regulations. Put differently, his claims merely seek to "[r]equir[e] the military to follow its own policies," which "does not interfere with its functions." *Roe*, 947 F.3d at 218.

### 4. Extent to Which Exercise of Military Discretion or Expertise is Involved

This final *Mindes* factor also favors finding MIDN Cho's claims justiciable. "[C]ourts have traditionally deferred to the 'superior knowledge and expertise of professionals' in such matters as duty orders, promotions, demotions, and retention decisions," which includes decisions to disenroll a midshipman from the Academy. *Hrdlicka*, 2023 WL 4108267, at *6 (collecting cases). In MIDN Cho's case, Naval officers have applied their discretion and expertise because the Superintendent reached an individualized decision regarding MIDN Cho's fitness to continue as a midshipman. *Cf. Roe*, 947 F.3d at 218–19 (reasoning no military expertise implicated where military did *not* reach individualized decision as to plaintiffs).

Nevertheless, even regarding personnel decisions, where a claim merely requires the court to determine whether the military followed its own policies, this Court has deemed such claim justiciable under the fourth *Mindes* factor. *See Deese*, 483 F. Supp. 3d at 305–06. As stated on the record, therefore, this factor too favors justiciability in this case. Plaintiff has met his burden under *Mindes*, and this Court is satisfied that all four *Mindes* factors favor judicial review.

## II.    Request for Preliminary Injunctive Relief

As explained above, the party seeking preliminary injunction bears the burden to establish entitlement to such "extraordinary" relief under each of the *Winter* factors. *MicroStrategy Inc.*, 245 F.3d at 339 (quoting *Direx*, 952 F.2d at 816); *Bessent*, 152 F.4th at 169–70 (quoting *Frazier*, 86 F.4th at 544). Specifically, the movant must establish that (1) he is likely to succeed on the merits of at least one claim; (2) he will suffer irreparable harm absent preliminary relief; (3) the balance of the equities favors him; and (4) relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the defendant is the government, the final two *Winter* factors merge, and the analysis becomes threefold. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As explained on the record and further below, Plaintiff has not met his burden to establish a likelihood of success on the merits as to either of his claims. Accordingly, he has not established entitlement to a preliminary injunction, and his Motion for Preliminary Injunction (ECF Nos. 2, 10) must be denied.

### A.  Likelihood of Success on the Merits

#### 1.  Count I: Violation of Procedural Due Process Under APA § 706

First, MIDN Cho has not shown that he is likely to succeed on the merits of his claim in Count I of violation of procedural due process rights under Section 706 of the APA. To

succeed on a claim of a violation of procedural due process pursuant to Section 706, a plaintiff must show that the government has deprived him "of constitutionally guaranteed liberty and property interests without constitutionally adequate procedures." *Berg*, 810 F. Supp. at 709 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). Such a claim thus requires a plaintiff to demonstrate both a constitutionally guaranteed interest *and* that the process afforded him was inadequate. *See id.* In this case, MIDN Cho has not shown a likelihood of success in establishing a constitutionally protected liberty interest.[8] Moreover, he has not shown a likelihood of success in establishing that the hearing, appeal, Commandant recommendation, and Superintendent review process he received was constitutionally inadequate for the purposes of his claim under Section 706.

MIDN Cho asserts a constitutionally guaranteed liberty interest based on the "reputation plus" doctrine, under which reputational damage plus some other damage such as an interest in employment may constitute a constitutionally protected liberty interest. *See* (ECF No. 10 at 1–3); *Paul v. Davis*, 424 U.S. 693, 701 (1976). This theory arises from the notion that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Guerra*, 942 F.2d at 278 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). To state a claim premised on a liberty interest, "a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction

---

[8] As all parties agreed on the record, "[m]ilitary service members do not have a property interest in their term of enlistment, attendance in military service academies, command position, or officer status." *Deese*, 483 F. Supp. 3d at 315 (collecting cases); *Stone v. Trump*, 400 F. Supp. 3d 317, 356–58 (D. Md. 2019) (summarizing caselaw that there is no property interest in continued military service).

with his termination or demotion; and (4) were false." *Deese*, 483 F. Supp. 3d at 315. In this case, although MIDN Cho may ultimately be able to show a liberty interest under a theory of stigma and reputational damage, he has not sufficiently shown at this stage that he is likely to succeed on the merits of such claim so as to be entitled to injunctive relief.

As discussed above and explained on the record, some courts have recognized some stigma associated with a general discharge (under honorable conditions) where the discharge certificate reflects a derogatory connotation. *See, e.g.*, *Guerra*, 942 F.2d at 278 (collecting cases finding stigma with drug-related discharge code); *May v. Gray*, 708 F. Supp. 716, 718, 722 (E.D.N.C. 1988) (finding stigma where discharge code stated "misconduct—abuse of illegal drugs"); *Golding v. United States*, 48 Fed. Cl. 697, 726 (2001) (collecting cases); *accord Casey v. United States*, 8 Cl. Ct. 234, 241 (1985); *Correa v. Clayton*, 563 F.2d 396, 397 n.1 (9th Cir. 1977) ("Because the vast majority of servicemen receive honorable discharges, a general discharge severely stigmatizes its recipient and significantly disadvantages him in the job market.") In this case, therefore, as noted on the record, MIDN Cho may be able to establish stigma because he will receive a general discharge (under honorable conditions) with a discharge code associated with unacceptable conduct.

Nevertheless, as this Court and many others have recognized, the mere fact that a discharged servicemember must disclose the discharge on future employment applications may not constitute publication by the employer as required to establish the second element of a liberty interest under stigma theory. *Deese*, 483 F. Supp. 3d at 315 (dismissing due process claim based on liberty interest because, "[a]lthough [plaintiff] alleges that he may need to explain to prospective employers that he was discharged because of a medical condition, there

is no allegation that the Air Force would make, or has made, that disclosure"); *see also Bennett v. Murphy*, 166 F. Supp. 3d 128, 144 (D. Mass. 2016) (collecting cases); *Knehans v. Alexander*, 566 F.2d 312, 314 n.2 (D.C. Cir. 1977); *Rich v. Sec'y of the Army*, 735 F.2d 1220, 1227 (10th Cir. 1984) (emphasizing requirement that, even assuming stigma based on nature of discharge, *government* must make the information public); *Simmons v. Brown*, 497 F. Supp. 173, 179 (D. Md. 1980) (collecting cases in which "[c]ourts have held that a liberty interest is not impinged by the mere fact of discharge from military service unless stigmatizing information is likely to be disseminated to the public at large or to prospective employers").  Thus, MIDN Cho has not shown that he is likely to successfully demonstrate that Defendants have publicized or will publicize the nature of his discharge and, therefore, he has not shown that he is likely to demonstrate that his discharge implicates a liberty interest.

Even assuming that MIDN Cho ultimately can establish a protected liberty interest, however, he has not established at this early stage that he is likely to succeed in showing that he was deprived of procedural due process.  As the Supreme Court has recognized, once a party establishes a constitutionally protected interest, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Where review occurs under the APA, a plaintiff bears the burden to demonstrate that the government's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).  As the Fourth Circuit has recently recognized, "[a]gency actions are arbitrary and capricious if the agency 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could

not be ascribed to a difference in view or the product of agency expertise.'" *Wilkins v. Hegseth*, --- F.4th ---, 2026 WL 451911, at *8 (4th Cir. Feb. 18, 2026) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).   Where the challenged agency action involves military decision-making, it is afforded extra deference. *Id.* at *4–5, *8 (discussing deference in context of Fifth Amendment due process claim and noting that analysis of Fifth Amendment equal protection challenge is analogous to APA challenge of military action).   This Court has previously recognized that a demonstration that a military service branch followed its own regulations may be sufficient to satisfy procedural due process. *Simmons*, 497 F. Supp. at 179 (discussing *Rew v. Ward*, 402 F. Supp. 331 (D.N.M. 1975)).   Such recognition reflects the presumption that military officers discharge their duties correctly. *Roberts v. Harvey*, 441 F. Supp. 2d 111, 120 (D.D.C. 2006); *see also Deese*, 483 F. Supp. 3d at 311.

In this case, MIDN Cho claims in Count I that the process afforded him "was constitutionally inadequate" because he was "denied the opportunity to present material witness evidence of bias at the Brigade Honor Board hearing, in violation of USNA regulations;" he "was also denied access to a verbatim record of the proceedings necessary for a meaningful appeal . . .;" and he "was also deprived of the opportunity to make a submission to ASN (M&RA) as mandated by 10 U.S.C. § 8462."   (ECF No. 8 ¶¶ 67–68.)   At this early stage, MIDN Cho has not established that he is likely to show that these allegations are sufficient to constitute an arbitrary and capricious deprivation of due process under Section 706 of the APA.   As to his allegation that he was denied the opportunity to present evidence of bias, the Commandant concluded that such deprivation was erroneous but constituted harmless error.   This conclusion was then reviewed by the Superintendent, who explicitly

noted his review of the entire case and provided specific reasons—including recommendations of separation from Plaintiff's chain of command and a prior honor concept violation—for his ultimate recommendation of separation.    Thus, Plaintiff has not shown that Defendants "entirely failed to consider an important aspect of the problem"—that is, the witnesses' potential bias. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.    Similarly, Plaintiff has not clearly alleged that he was entitled to a verbatim record of the proceedings such that denial of such record clearly constituted a due process violation.    Rather, his Amended Complaint stated that "Naval Academy guidance did not clearly specify certain protections."    (ECF No. 8 ¶ 55.)

Finally, to the extent that Plaintiff's Count I hinges on the allegation that deprivation of the opportunity to make a statement to the ASN (M&RA) constitutes a violation of process provided under 10 U.S.C. § 8462, he has not shown a likelihood of success.    Specifically, as discussed further below in reference to Count II, the denial of the opportunity to provide a statement is consistent with SECNAVINST 1531.4B.    Thus, to demonstrate a likelihood of success on the merits as to a due process deprivation based on the Academy's decision to follow SECNAVINST 1531.4B even to the extent that instruction contradicts § 8462, he must show that SECNAVINST 1531.4B is an arbitrary and capricious use of military authority.    For the reasons stated on the record and elaborated below as to Count II, he has not made such a showing at this preliminary stage.    Accordingly, MIDN Cho has not shown a likelihood of success on the merits as to Count I.

## 2. Count II: Violation of Federal Statutes and Navy Regulations Under APA § 706

MIDN Cho likewise has not shown a likelihood of success on the merits as to Count II.    MIDN Cho's claim in Count II rests on the notions that: (1) Defendant Secretary of the

Navy Phelan exceeded his authority to the extent that, in SECNAVINST 1531.4B, he delegated to the Superintendent alone—without review by the ASN (M&RA)—the authority to disenroll for unsatisfactory conduct midshipmen who have not incurred their service obligation; and (2) regardless of whether such delegation exceed the authority of the Secretary of the Navy, the Naval Academy's actions pursuant to the procedure set forth in SECNAVINST 1531.4B were arbitrary and capricious to the extent they deprived MIDN Cho of protections in 10 U.S.C. § 8462 and violated USNA regulations that are themselves consistent with § 8462.  As explained above, agency action is arbitrary and capricious under Section 706 of the APA where the agency violates its own regulations or where it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *Stinson v. United States*, 508 U.S. 36, 45 (1993) (explaining agency interpretation of its own regulation may be improper where such guidelines "violate[s] the Constitution or a federal statute . . . ."). "Moreover, courts afford additional deference to military matters 'reasonably relevant and necessary to furtherance of our national defense,' such as the decision here regarding whom to make a commissioned officer." *Doolen v. Esper*, 2018 WL 4300529, at *12 (S.D.N.Y. Sep. 10, 2018) (citing *Mack v. Rumsfeld*, 784 F.2d 438 (2d Cir. 1986) (per curiam)) (discussing APA challenge to cadet's disenrollment).  At this preliminary stage, Plaintiff has not established that Defendants' actions consistent with SECNAVINST 1531.4B violated 10 U.S.C. § 8462 or USNA regulations in a manner arbitrary and capricious under the APA.

As an initial matter, Plaintiff has not established at this preliminary stage that SECNAVINST 1531.4B contradicts 10 U.S.C. § 8462. As a result, MIDN Cho has not shown that he likely will be able to show that Defendants' actions were arbitrary and capricious in violation of Section 706 to the extent Defendants followed SECNAVINST 1531.4B. Section 8462 does not appear to affect the Secretary's power to delegate his own authority, including sub-delegations thereafter, and MIDN Cho does not dispute that the Secretary has the authority to delegate his disenrollment authority to the ASN (M&RA). *See* (ECF No. 2 Ex. E); 10 U.S.C. § 8013(f) (authorizing delegation of authority). Plaintiff has submitted the November 2007 Memorandum in which then-Secretary of the Navy Winter delegated to the ASN (M&RA) his disenrollment authority for cases of unsatisfactory conduct and explicitly stated, "[t]his authority may be further delegated." (ECF No. 2 Ex. E.) Accordingly, it appears from the record at this preliminary stage that the Secretary had the authority to delegate his disenrollment power to the ASN (M&RA) and that the ASN (M&RA) was entitled to further delegate such disenrollment authority.

Additionally, MIDN Cho has identified no language in § 8462 that restricts the Secretary's delegation authority in this disenrollment context. Thus, to the extent that SECNAVINST 1531.4B delegates disenrollment authority for midshipmen who lack a service obligation to the Superintendent alone, it is not clear that such delegation violates § 8462. The potential conflict between SECNAVINST 1531.4B arises from the language in § 8462 that provides an additional level of review by a Naval officer beyond the Superintendent of the Naval Academy. 10 U.S.C. § 8462(a), (b). SECNAVINST 1531.4B appears to rescind such review for midshipmen not yet subject to a service obligation because it delegates the

Secretary's reviewing authority under § 8462 to the Superintendent.  As explained on the record, MIDN Cho has not established that this delegation is improper and, therefore, he has not shown at this preliminary stage that Defendants acted in an arbitrary and capricious manner by observing SECNAVINST 1531.4B.  Accordingly, MIDN Cho has not shown that he is likely to succeed on the merits of his claim in Count II.  Absent a showing of a likelihood of success on the merits of at least one claim, this Court cannot grant the extraordinary remedy of preliminary injunctive relief.  *Am. Fed'n of Teachers v. Bessent*, 152 F.4th 162, 169 (4th Cir. 2025) (quoting *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 544 (4th Cir. 2023)).

Because failure to satisfy one *Winter* factor requires denial of injunctive relief, this Court is not required to analyze the remaining factors.  Nevertheless, this Court briefly analyzed such factors on the record and reiterates such summary here.  As to a showing of irreparable harm, many courts have concluded that "[t]he loss of time, military seniority, education and status involved in a dismissal from the Academy cannot be adequately compensated at law" such that it constitutes irreparable harm.  *Tully*, 608 F. Supp. at 1225 (quoting *Phillips*, 687 F.2d at 622); *Love*, 508 F. Supp. at 183 (noting that immediate discharge of midshipman would "result[] in certain irreparable harm to his career and status"); *N.B.*, 552 F. Supp. 3d at 397 (reasoning plaintiff showed irreparable harm where he showed that he would not receive his diploma or U.S. Coast Guard license and officer's commission).  *But see Spadone*, 842 F. Supp. 2d at 302 (finding no irreparable harm where cadet was expelled from West Point and faced damage to his future military career and his reputation).  In this case, MIDN Cho has shown that he will suffer irreparable harm upon his immediate disenrollment from the Academy.  As to the final factors, which merge in this case, the balance of the equities and public interest are relatively

neutral. Certainly, MIDN Cho has shown that he will face significant harm if he is disenrolled and there is public interest in preventing disparate or improper disenrollment of midshipmen. *See, e.g. Tully*, 608 F. Supp. at 1227 (concluding balance of hardships "decidedly" favors cadet-plaintiff); *Love*, 508 F. Supp. at 183 (noting concern at disparate punishment of midshipmen and balance of equities would favor plaintiff if the Navy had not agreed to defer the plaintiff's orders for active duty to allow him to complete his education elsewhere). Yet, the Academy and the public have a significant interest in maintaining high standards for midshipmen and Naval officers. *See Spadone*, 842 F. Supp. 2d at 305; *N.B.*, 552 F. Supp. 3d at 404 (noting national interest in only allowing servicemembers of highest moral character). Additionally, there is significant public interest in deferring to the personnel decisions of experienced military officers. *Irby*, 245 F. Supp. 2d at 798 ("[T]he public has an interest . . . in seeing that the Army's discretionary decision making with respect to personnel decisions is effectuated with minimal judicial interference.").

For these reasons, MIDN Cho's Motion for Preliminary Injunction (ECF Nos. 2, 10) must be DENIED.

## CONCLUSION

For the reasons stated on the record and explained above, Plaintiff's Motion for Preliminary Injunction (ECF Nos. 2, 10) is DENIED and Plaintiff's Motion for Temporary Restraining Order (ECF No. 5) is DENIED AS MOOT.

A separate Order follows.

Date: February 25th, 2026

/s/
_____
Richard D. Bennett
United States Senior District Judge